## Jitney-Jungle, Inc., of Jackson, Miss., v. Planters Bank & Trust Co.

(Decided Feb. 8, 1938.)

H. W. LINTON for appellant.

TRIMBLE & TRIMBLE for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing in part and affirming in part.

This is an appeal from a judgment of the Christion circuit court sustaining exceptions to the claim of Jitney-Jungle, Inc., of Jackson, Miss., amounting to $2,156.71, which was filed in a proceeding for the settlement of the affairs of an insolvent corporation and the distribution of its assets among its creditors.

On January 2, 1934, the city of Hopkinsville brought an action against the Jitney-Jungle, Inc., a Kentucky Corporation engaged in the grocery business in Hopkinsville, to recover past due taxes amounting to $413. The city asked that it be adjudged a lien on the defendant's property, and that the property be sold to satisfy the lien. Other creditors intervened, and, before final action was taken, the defendant made a voluntary assignment for the benefit of all its creditors. The Planters Bank & Trust Company was the assignee. Thereafter, the assignee filed an answer, counterclaim, and cross-petition in the action pending in the circuit court. It made all creditors of the corporation parties defendants, asked that an order of reference be made to the master commissioner to advertise for claims; that same be reported to the court; and that its accounts as assignee be settled. The names of all creditors, with their residences and post office addresses, and the amounts of their respective claims were set out in the pleading. A large number of the creditors

were nonresident corporations. The motion for reference to the master commissioner was overruled. An order was entered making the creditors named in the answer, counterclaim, and cross-petition defendants, and appointing a warning order attorney, but later this order was set aside. Thereafter Jitney-Jungle, Inc., alleging that it was a corporation organized under the laws of the state of Delaware, having its principal office and place of business in Jackson, Miss., and that the assigned corporation was indebted to it in the sum of $2,156.71, filed an intervening petition asking to be made a party. As heretofore stated, its claim was disallowed, and it has appealed.

Proof was heard on the issues made by the pleadings, and the exceptions to the claim. It appears that Jitney-Jungle, Inc., of Jackson, Miss., and Jitney-Jungle, Inc., of Hopkinsville, Ky., entered into a written contract June 6, 1925, in which the former was referred to as the grantor and the latter as the grantee. The first clause of the contract reads:

"The grantor in consideration of five hundred dollars ($500.00) receipt of which is hereby acknowledged and being induced thereto by the habits, character, and business ability of the grantee, has this day granted unto the grantee the rights and license to operate and conduct self-service grocery stores under the plan known as the Jitney-Jungle System, under United States Patent No. 15,368, for the life of said patent and for as many years thereafter as the grantee herein shall comply with the terms of this agreement: The rights and license herein granted shall cover only the territory herein stated:

"Hopkinsville, and Christian County, Kentucky."

Another clause provided that:

"The grantee agrees to pay to the grantor on the first day of each calendar month or not later than ten days thereafter one half of one percentum ($\frac{1}{2}$ of 1%) of the gross sales of each store, which is operated under this license, for the month or part thereof preceding such date, and the grantee further agrees that in the event the above men-

tioned payment of one half of one percentum (½ of 1%) is not paid before the 25th of each month then the grantee will pay to the grantor one percentum (1%) of the gross sales of each cash store operated under this license, and it is further agreed that the grantee will render unto the grantor a true and correct report of the business of each store, for the period covered by said payment, and where more than one store is operated, then a separate report will be made to cover each store."

The grantor also agreed to furnish to the grantee the "buying power" then in force and which was employed by the Jitney-Jungle system, and to continue to furnish it either through itself or through some other agency. In the event such "buying power" was discontinued, the grantee was given the right to cease payment of the royalty. The grantee obligated itself to install and put into full operation not less than one store, and to invest in merchandise for each store not less than $5,000, and to operate such store or stores under such regulations and plans as might from time to time be promulgated by the grantor. This provision applied particularly to the character and color of the furniture and fixtures, and the arrangement thereof in each store. For a while the grantee operated three stores in Hopkinsville, and all royalties due to appellant under the contract were paid up to January, 1933. The Hopkinsville corporation became financially involved in 1932, and two of its stores were discontinued. The third store continued to operate at a loss until it was closed in December, 1934. The total sales of the Hopkinsville corporation from January 1, 1933, until it ceased doing business in 1934, amounted to $215,671.65, according to a written report made by it to appellant. The appellant claims that it is entitled to 1 per cent. of this amount, or $2,156.71, under the contract. The appellee claims that appellant breached its contract in that it failed to furnish the "buying power" referred to in the contract, and thereby relieved the appellee of the duty of paying any royalty. It insists that in any event the additional one-half per cent. is in the nature of a penalty and cannot be enforced in a proceeding of this kind.

Appellee introduced as its chief witness Jeff H.

Hammonds, who was the manager and principal owner of the Hopkinsville corporation. He testified in an indefinite way that few, if any, purchases were made from or through the appellant subsequent to January 1, 1933, because his company was able to purchase goods elsewhere to better advantage. His testimony shows, however, that during all of that time the company was in financial trouble, and was unable to make purchases for cash or to meet its obligations promptly. In order to avail itself of the buying power furnished by appellant, it was required by the contract to "remit to the grantor the full amount of all invoices covering such shipments made to the grantee by the grantor or the agency furnishing said buying power within seven days from date of invoice covering such shipments." During 1933 and 1934 much correspondence took place between the two companies, and representatives of each visited the other. The Hopkinsville corporation frequently requested assistance and advice, and at all times recognized its obligation to pay the royalty stipulated in the contract. The following is taken from a letter written to appellant December 21, 1933:

"Regarding the Royalty which we owe you, I wish to advise that we do not have any cash at this time, and it is impossible for me to send you a check to-day. If you will stand by me for a few days longer, I believe you will be satisfied with the decision we make, and as you have always done, render us what assistance you can to put this Unit back on a profitable basis."

On March 7, 1934, Hammonds wrote to appellant that he had closed two stores and was operating only one. The letter concluded:

"I believe that with the one store I will soon have a Jitney Jungle that you will be proud to refer to, they have me worried very much now, but they are not going to keep me down long.

"I do not know what you will do regarding the royalty. I do hope however that you will give me a chance with the one store."

The correspondence continued until late in October, 1934, and at no time did the Hopkinsville corporation deny that it was indebted to appellant for the royalties

claimed by the latter. The proof fully sustained the claim for royalty, and the circuit court erred in adjudging it to be invalid in toto. The appellant, however, is not entitled to the full one per cent. now claimed by it. The appellee insists that the additional one-half per cent. is a penalty and therefore unenforceable, but, aside from that, the appellant for the first time claimed the full one per cent. royalty after the deed of assignment had been made. Subsequent to January 1, 1933, it apparently acceded to appellee's repeated requests for extensions of time for payment of the royalties, and during the time appellee was in business demanded only the one-half per cent. royalty. To that extent its claim should have been sustained.

The appellee has taken a cross-appeal, and seeks a reversal of the judgment setting aside the order making all the creditors parties to the action and denying an order of reference to the master commissioner. The assignee takes the position that, for its protection and for an orderly administration of the estate, it is necessary to make all creditors parties to the action and to refer the cause to the master commissioner to advertise for claims. Chapter 7 of the Kentucky Statutes, section 74 et seq., prescribes the procedure to be followed when a deed of assignment is lodged for record in the county clerk's office. Section 90 of the Statutes provides that the assignee shall give notice in a certain manner of the time and place where he will sit to receive claims against the estate. To such of the creditors as do not reside in the county where the assignee qualifies, he must mail notice to their last known place of address. By section 96 of the Statutes, a suit to settle an assigned estate may be brought in the circuit court by the assignee or by any creditor or creditors representing one-fourth of the liabilities. This section provides that:

"The said circuit court shall have all the power and authority to administer and settle up the assigned estate conferred on the county court by this act, in addition to its power and authority heretofore existing as a chancery court, and the assignee shall have full power and authority to sell the personal and real property belonging to the assigned estate, at public or private sale, and to convey and pass

all the right and title to the same which the grantors had in the deed of assignment at its date.''

If a suit to settle an assigned estate is brought in the circuit court as permitted by section 96, the procedure prescribed by the preceding sections applies. The circuit court may, in addition to the powers of the county court under the statute, exercise others which appertain to courts of equity jurisdiction. Stoll's Adm'r v. Tarr, 141 Ky. 296, 132 S. W. 904. Consequently, it would not be error, and in many instances doubtless would be advisable, to make all creditors parties to the action, and to refer the cause to the master commissioner to advertise for claims, but this procedure is not necessary in order to afford complete protection to the assignee. When a creditor files his claim, he becomes a party to the action, and, if the assignee gives the notice required by section 90 of the Statutes, his acts are just as effective as the acts of a warning order attorney or a master commissioner.

The judgment is reversed on the original appeal, and affirmed on the cross-appeal.